UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ANGELLA M. K.,

            Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

            Defendant.

Case No. 6:24-cv-02142-AR

OPINION AND ORDER

**ARMISTEAD, United States Magistrate Judge**

      Plaintiff Angella M. K. seeks judicial review of the Commissioner's final decision denying Social Security disability benefits. Plaintiff (1) argues that the Administrative Law Judge failed to incorporate in the residual functional capacity (RFC) determination limitations assessed by a consultive psychologist, Dr. Scott Alvord; (2) challenges the ALJ's finding as unpersuasive opinions about her limitations from Kimberly Richards, her therapist; and (3) contends that the ALJ's discounting of her subjective symptom testimony lacked clear and convincing reasons. (Pl.'s Br. at 4-17, ECF 9.) The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is AFFIRMED.

**(1)** ***Dr. Alvord's Limitations.*** The ALJ characterized as "moderate" the following limitations from consultative psychological examiner, Dr. Alvord: plaintiff's difficulty in understanding, carrying out, and remembering instructions; her difficulty in concentrating and persistently working at a reasonable pace; her difficulty maintaining effective social interactions—consistently and independently—with coworkers, supervisors, and the public; and her ability to cope with normal pressures at work. (Tr. 29.) Plaintiff takes issue with how the ALJ translated those findings when posing hypotheticals to the vocational examiner and including limitations in the RFC determination. (Pl.'s Br. at 7.)

For example, the RFC included limiting plaintiff to "occasionally hav[ing] direct interaction with the general public, co-workers, and supervisors" (Tr. 24), yet plaintiff contends that that time limitation fails to consider Dr. Alvord's limitation about her ability to maintain *effective* social interaction on a consistent and independent basis. (Pl.'s Br. at 7; Pl.'s Reply Br. at 2-3.) That is, according to plaintiff, "an RFC limiting the amount of time Plaintiff spends with supervisors, coworkers, or the public does not accurately account for whether that interaction is *appropriate or effective* when it does happen." (Pl.'s Reply Br. at 3.) In plaintiff's view, the RFC limiting her to occasional direct interaction with the supervisors, coworkers, and the public and no fast-paced or production work fails to account for "[p]laintiff's individual response to stress" as provided in SSR 85-15, *available at* 1983-1991 Soc. Sec. Rep. Serv. 343 (Jan. 1, 1985).

The ALJ did not err here. Much of plaintiff's argument hinges on how much significance the ALJ should have given to the term "moderate." But the ALJ is "responsible for translating and incorporating clinical findings" by Dr. Alvord "into a succinct RFC" and when posing questions to the vocational expert. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th

Cir. 2015); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

Plaintiff asserts also that Dr. Alvord's treatment notes were consistent with her own subjective testimony regarding areas of socialization, such as leaving the house or dealing with demands from supervisors. (Pl.'s Br. at 8.) And she argues that the ALJ failed to account for her anxiety flares, auditory hallucinations, and her response to time pressures when incorporating Dr. Alvord's opinion into the RFC. But the ALJ did not err in not incorporating plaintiff's own testimony into the RFC. As discussed below, the ALJ appropriately discounted plaintiff's testimony, and therefore was not required to include her discredited limitations in the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (rejecting claimant's argument that RFC was incomplete because it did not account for her limitations where ALJ appropriately discounted her testimony).

**(2)** *Kimberly Richards.* Kimberly Richards, a licensed professional counselor, was plaintiff's therapist and provided two opinions about plaintiff's mental health impairments. In her 2022 opinion, Richards opined that plaintiff has limitations—including limitations as to plaintiff's social functioning—that would preclude performance for 30 percent of the workday. (Tr. 9.) Richards also opined that plaintiff would be absent five or more days per month and off-task for 30 percent of the workday due to her nervous system dysregulation. (Tr. 25.) That opinion was followed by another in 2024, in which Richards stated that plaintiff's symptoms of distress have remained unchanged, and that despite weekly therapy, plaintiff "becomes dysregulated and isolates when feelings arise causing her to be overwhelmed. When this occurs, she exhibits increasing levels of agoraphobia and cannot take care of her basic needs." (*Id.*) The ALJ was not

Page 3 – OPINION AND ORDER
*Angella M. K. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-02142-AR

persuaded, finding that, despite Richards' long-term treating relationship with plaintiff, Richards' opinions were neither well-supported by her treatment notes nor consistent with the overall record. (*Id*.) Plaintiff contends that the ALJ's finding that the social-functioning limitation opined by Richards was unpersuasive is not supported by or consistent with the record. (Pl.'s Br. at 10-12; Pl.'s Reply Br. at 4); 20 C.F.R. § 404.1520c (the regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors") (quoting 20 C.F.R. § 404.1520c(b)(2)). The court disagrees.

To start, the ALJ observed that Richards' treatment notes "heavily focused" on plaintiff's relationships with family members and romantic partners rather than her vocational ability or functioning. (Tr. 25.) That observation is supported by the record. (Tr. 25; *see also* Tr. 1413, 1415, 1493, 1479 (treatment notes examine plaintiff's relationships, exercises to help heal those relationships, with the main goal of helping plaintiff understand and accept her past experiences, particularly regarding her abusive relationship). Further, the ALJ considered Richards' treatment notes that showed that when plaintiff engaged in activities or responsibilities related to vocational activities, plaintiff reported experiencing a positive effect on her symptoms, which undermined the severe limitations assessed by Richards. (Tr. 25, citing Tr. 1383, 1437-38 (discussing how babysitting gave plaintiff a sense of purpose), 1466 ("She reported feeling 'stable' this week, noting that she had been busy helping her grandmother and mom."), 1474 ("The client seemed to find some solace in her current coping mechanisms, specifically working in her parents' yard, which seems to help her manage her feelings of anger.").)

Page 4 – OPINION AND ORDER
*Angella M. K. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-02142-AR

The ALJ was also unconvinced by Richards' opinion about the extent of plaintiff's dysregulation: "regarding [plaintiff's] risk of 'dysregulation,' as referenced in [Richards'] opinion for why plaintiff is so severely limited, the treatment notes mention only a couple specific examples of dysregulation." The plaintiff contests that finding, asserting that because she sometimes experienced "psychological dysregulation *even in the safe, familiar setting of her therapist's office*," this supports Richards' opinion about how her dysregulation would negatively affect her ability to work. (Pl.'s Br. at 11.) But the ALJ's finding is supported by the record—dysregulation is mentioned twice in Richards' treatment notes: a mention that living with plaintiff's family causes her to feel dysregulated and another mention that plaintiff became dysregulated during therapy after discussing her family origins. (Tr. 1411, 1433.) Neither mention of dysregulation was related to work, and the ALJ was entitled to conclude that the sparse mention of dysregulation in the treatment notes did not support Richards' opinion as to plaintiff's dysregulation relating to her ability to work. The ALJ did not err.

**(3)** ***Subjective Symptom Testimony.*** Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for discounting two parts of her subjective symptom testimony. (Pl.'s Br. at 12-16); *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) (if a claimant provides objective medical evidence of an underlying impairment and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony); 20 C.F.R. § 404.1529. The first part concerns her ability to sit or stand for more than 20 minutes and the second part concerns her difficulties with social interactions.

**(a)** **Sitting and Standing.** Plaintiff testified that her fibromyalgia and arthritis limited her to sitting or standing for about 10-15 minutes at a time (Tr. 47-54), which the ALJ found not

credible, as that claimed limitation was not included in the RFC. Plaintiff argues that the parts of the record the ALJ relied on for that finding are not, when properly considered, inconsistent with her testimony. (Pl.'s Br. at 12-14). In particular, plaintiff contests the ALJ's finding that her physical examinations were "mostly unremarkable" (Tr. 27), asserting that the examinations on which the ALJ relies were focused on health issues other than her fibromyalgia and arthritis. (Pl.s Br. at 13-14.) The court has reviewed the treatment notes for the examinations and has no reason to second guess the ALJ's consideration of those notes—even if the treatment providers were "focused" on issues other than her arthritis and fibromyalgia, they were nevertheless examinations where plaintiff's "normal appearance" and "normal gait" were observed, and no functional abnormalities were noted. (Tr. 1508, 1515, 1525, 1529.) *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). And the ALJ was permitted to rely on treatment notes showing that her fibromyalgia was effectively controlled when she was on her medication (Tr. 26, citing Tr. 1094, 1098, 1108, 1120, 1506-08), and, in the most recent examination, an observation that plaintiff's fibromyalgia was stable and controlled with Lyrica (Tr. 27, citing Tr. 1508, 1515, 1524, 1529, 1532, 1536-37).

      The court is also not persuaded by plaintiff's argument that the ALJ improperly relied on physical activities described in treatment notes to discount her symptom testimony. (Pl.'s Br. at 14.) Those treatment notes relied on by the ALJ reflect that plaintiff engaged in daily walks, remodeling, babysitting of grandchildren, yard work, and exercise which had therapeutic

purposes and effects. (Tr. 25) Those examples of vocational activities that were beneficial stood in contrast, as the ALJ pointed out, to "the few broad and vague references to the claimant's struggles with work, stress at work, . . . and ability to maintain employment." (*Id*.) It is enough that the ALJ's findings are supported by substantial evidence in the record and suggest a greater physical and mental capacity than alleged by plaintiff. (Tr. 52, 53, 1531, 1534, 292, 599); *see Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other ground by statute*, 20 C.F.R. § 404.1502(a) ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant to the extent that they contradict claims of a totally debilitating impairment."); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (inconsistencies between testimony and conduct may be considered in weighing a claimant's credibility.).

(b)     **Social Interaction**. Plaintiff testified that, because of her anxiety and auditory hallucinations, she has difficulty interacting with others and maintaining focus and argues that the RFC limiting her "to a low stress environment with limited expectations regarding pace and with limited interactions with others" insufficiently captured her difficulty with concentration. (Pl.'s Br. at 14-15.) That is because, according to plaintiff, the ALJ erred in focusing on plaintiff's better moments and failing to account for when plaintiff is doing worse. (Pl.'s Br. at 15) (citing *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.")).

The court disagrees. The instances in the record that the ALJ relied on to discount plaintiff's symptom testimony about her social interactions were not merely a "few isolated instances of improvement." *Garrison*, 759 F.3d at 1017 ("Cycles of improvement and

debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Here, the ALJ acknowledged that plaintiff's symptoms "ebbed and flowed over time" (Tr. 25) but identified many instances of stability and improvement. (Tr. 24-27, *see also* Tr. 598, 604-05, 611-12, 631, 984, 1095, 1118, 1349, 1435, 1437, 1459; Tr. 26, citing Tr. 1093 (the ALJ explaining that plaintiff "received treatment for her mental impairments with medication management, which was noted to be working well")). The ALJ's findings here are supported by substantial evidence. (*See also* Tr. 634-35, 981, 1073, 1508-09.) Accordingly, the ALJ's analysis provides specific, clear and convincing reasons to discount plaintiff's subjective symptom testimony.

Because the ALJ did not err in evaluating the medical opinion evidence and subjective symptom testimony, the RFC accounted for the limitations credited by the ALJ and supported by substantial evidence in the record; the ALJ did not err at step five.

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision. DATED: February 17, 2026.

_____
JEFF ARMISTEAD
United States Magistrate Judge